124-1200-WC Executive Mailing Services Appellant Cross Appellee by William Britton Isley v. Illinois Workers' Compensation Comm'n et al. Maria Rodriguez Appellee Cross Appellant by Paul Coghan You may proceed. Thank you, Your Honor. May it please the justices, counsel, good afternoon. My name is Britt Isley. I represent the appellant in this case, Executive Mailing Services. The appellant believes that the commission's corrected decision is against the manifest weight of the evidence. The decision relies on medical reports and opinions that are in evidence based on a post-accident physical limitation from a WCE, a work conditioning evaluation, like an FCE. Instead, the commission should have properly used evidence showing the limitations from the employee's right shoulder, which everyone in the case agrees is the only injury the claimant had. The right shoulder was injured at work in 2015. It was the only body part in this case that was injured, and it was pretty badly injured. She needed two surgeries, one in September 21, 2017. It was a right rotator cuff tear repair, and then a second one to fix a frozen shoulder in February 8, 2018. Her surgeon, Dr. Oh, followed her treatment through 2018, 2019, and 2020, and he actually gave her restrictions for that right shoulder as early as December 3, 2018. No lifting of 10 pounds, no pushing or pulling of 10 pounds, no over the shoulder of 10 pounds. That's in the record. When he released her at MMI on January 7 of 2019, he again gave her permanent restrictions of no lifting over 15 pounds, no pushing or pulling over 15 pounds, and no overhead shoulder work over 15 pounds. One and a half years later, we get this WCE. This is, I think, something that he wanted because he then adopted it, but in this WCE, which is dated August 28 of 2020, it's a little vague. It's hard to read. It might be August 26 of 2020, but the point is this was a year and a half after she was at MMI. The therapist in the limitations. Now, again, these are post-accident limitations not related to work, but the commission to rely on this WCE dated August 28 of 2020, and the opinions that come from it is against the manifest way to the evidence because we know that the evidence here shows she injured only her right shoulder. We should instead, I think, rely on Dr. Oh's, or I think the commission should have relied on Dr. Oh's right shoulder restrictions, which came when she was declared to be at MMI. My opposing counsel will definitely argue, I think, because he has in the past, that Ms. Maria Rodriguez, the employee, is not in showroom condition, and that you take the petitioner as you find them, and in some cases, that's true. If you're talking about an initial accident where you have pre-existing conditions, not work-related, you take them as you find them, but this has to do with post-accident, non-work-related limitations, and the WCE establishes that she has bilateral hand and bilateral leg limitations upon which Dr. Oh and Thomas Grzyk, the vocational counselor, improperly relied upon in order to give their opinions. They are restrictions beyond the right shoulder restrictions that Dr. Oh originally gave her. Which issue, as you have the issues laid out in your brief, which issue is this? I think this is part of causal connection and nature and extent. So, it's part of the first or the second argument that you listed as the issues presented for review? Let's see here. I'm sorry if I, you might have to give me a moment. Okay, so it's really the first issue, whether it's against the manifest way of the evidence for the commission to rely on this WCE. The other issues have to do with the awards that come from it. The awards like vocational rehab expenses, whether she's an ODLAT permanent total, and then the penalties, which we're asking should all be reversed because of the reliance on this, improper reliance on this WCE. So, I hope that answers the Justice's question. Okay, well, we can get to the, back to your list. Unless I'm looking at something that others don't have, I don't see anything in your briefs that have any authorities cited to in support of your position. Issues 3, 4, 2, 3, and 4 are essentially one paragraph of argument with no reliance on any case law or statutory law or citations. So, how are those issues even before us and how are those not forfeited by what you left out of the brief? I think it's just a sequential chain. Without the causation, how do you get to, you know, without the causation, how do you get to penalties? You have to get through the first issue first. That's right. But assuming that we get past the first issue, how do we get to, how do we have, how have you not forfeited those next three issues? I mean, the brief doesn't comply with the rules on how this brief should be presented to us and we don't have any authority to, you know, your argument is there without any support. So, are we to look for that supporting law on our own? No, of course not. But I would again say that it's because of the lack of causation that there shouldn't be a reliance on the WCE. And, you know, without the WCE, I just don't think you can get to vocational expenses and penalties. I think what you're being asked is, if we were to rule against you on the first issue, you forfeit the next three. Because you cite no authority for the propositions. I do agree. Yeah, if we rule for you on the first issue, others fall in line. But if we rule against you, how do we ever reach the last three? No, I mean, I will submit that I don't have case law for those topics. And my thinking was that I would win on the first one. Pretty big gamble, isn't it? Well, I, you know, that's how I set up the brief. All right. Okay. And I would continue by saying a simple way to put this in a way that's, you know, that I think about it is that she had a work-related injury to her right shoulder with permanent restrictions from Dr. Ho, her own treater, as of January 7 of 2019. But with her WCE of August 28, 2020, it then became, against the manifest way, the evidence for Thomas Gryzik and Dr. Ho to rely on that WCE. It's something that has to do with her hands and her legs. It was based on these restrictions for post-accident conditions of the body, unrelated to the accident. The employer would ask the court reverse the commission's decision and remand this to the commission with instructions to follow Dr. Ho's permanent restrictions that he gave for her shoulder. Because her right shoulder was the only injury in this case and no other body part. Thank you. Questions from the court? Okay. You all have time in the bubble. Mr. Coughlin, you may proceed. Thank you. May it please the court, my name is Paul Coughlin and I represent Maria Rodriguez. The only issue that was properly raised by appellant is whether or not the work capacity evaluation should have been properly admitted by the commission. Everything else, as the court pointed out, has been waived. In my opinion, they're not in a really good position or posture to argue that the commission should not have considered that because they offered that exhibit themselves as an exhibit during Dr. Ho's deposition. This is a very simple case. I don't know why the employer here continues to willfully ignore and misconstrue the act. It's pretty clear. It's true that we agree the only part of the body that was injured here was Ms. Rodriguez's right shoulder. However, both Dr. Ho and the employer's initial IME physician, Dr. Baxamusa, concurred that Ms. Rodriguez was unable to return to her previous job and that she should only go back to work within the restrictions set forth in the work capacity evaluation or functional capacity evaluation. Both sides agree on that. So, essentially, when you get to that point in a case when the injured worker is no longer able to go back to work, the shoulder isn't what's injured at that point. It's her employability that's injured. That is what the commission has to look at. And that includes things that admittedly are not related to the accident. Things like her education. Things like her age. Things like her work experience. None of those items are related to the accident. Yet, nonetheless, Westin Hotel tells us and all the other cases on Odd Lot Perm Total tell us that the commission not only is allowed to consider those things but they are required. They're required to consider those things because ask yourself a simple question. If they don't do that, what's going to happen to this woman? Is an employer just going to throw her out on the curb and do what Mr. Minnick wanted to do here and come up with jobs that she was physically incapable of performing? That's going to be the game plan for her vocational rehabilitation. Make her, tell her that she has to do things that she can't do so they can slough her off on public aid or somewhere else and walk away from her after they've damaged her. They have to prove that she's employable. They have to establish that. Okay, so what happened here and typically we don't, we normally, we don't have this issue come up that much I'm happy to say in workers' comp setting with experts. We tend to have a lot of the same experts that testify in a lot of cases. It's not as contentious usually as it is in a civil case where there's motions in limine to strike the expert and all their opinions in every single case. We typically don't have that. You know, the Rude House case tells us that the employer has a right to rely on an expert. I don't deny that. However, however, expert opinions are not without limitations as your honors know. An expert cannot assume the function of the finder of fact. An expert also cannot dictate the law. Here, Mr. Minnick attempted to do both, to do both. He tried to A, say that Dr. Ho's restrictions as it relates to other parts of the body. He's like, well, that wasn't injured in the accident, so we can ignore that. So I'm going to assume she's got unlimited abilities on all these other parts of the body. And then he also coupled that with Mr. Minnick now is telling, trying to tell the arbitrator and the commission the law and saying you don't have to consider the parts of the body that weren't in the accident. In fact, they went so far, they went so far as to set up additional IMEs to other parts of her body that were not injured. Despite the fact I stipulated that we never claimed that she injured any other part of the body other than the right shoulder. Why they did that, I don't know. Again, they seem to be willfully misconstruing the commission. So their first argument really is not, is not whether or not the commission erred in relying on the FCE, on the WCE. What their first argument is, is a collateral attack on the commission decision. And the unstated premise of their argument is the commission can't look at other parts of the body other than the part of the body that is injured in the accident. And the reason that they don't state that is because there's no case that says that. All the cases go the other way, including the Costco case that I cited from, it's a rule 23 from 2012. Essentially a carbon copy of the same argument that they're trying to do here. Although if you ask me, the Costco case wasn't quite as, they weren't quite as forceful as the employer in this case is. The employer here just flat out says you can't look at any other part of the body other than the part of the body that was injured. So we have to assume Superman, perfectly great at college level athlete abilities and all other parts of the body. Well, that's a great argument, but if that's the law, then nobody would ever be an odd lot firm total. And more importantly, injured workers would be assigned to do jobs that they're incapable of performing. That is what happened here. The arbitrator saw it for what it was. The commission saw it for what it was. The circuit court saw it for what it was. So I don't know. I've been very frustrated with this case from the beginning because it seems to me, this is a case of somebody kind of trying to, rather than going to Springfield and changing the law, they think they're going to use my client and drag her all the way up to the appellate court to try and come up with a new spin on what an odd lot firm total is in Illinois. I don't think that's the way you change the law. That seems to me what's going on because nothing else makes sense. It certainly doesn't make sense reading their arguments. And also as far as counsel's argument, this is a new one he came up with after I cited the Costco case in my brief. Now he's been arguing from day one. If the part of the body wasn't injured, we don't have to look at it. And then after I filed my brief in this case, now his argument is those are post-accident restrictions. Okay. Time out. Time out. First of all, that wasn't his argument at arbitration. It wasn't his argument in front of the commission and it wasn't his argument in the circuit court. But more importantly, no doctor ever testified that she had an accident after this work accident. No doctor, there's no medical evidence that anything is related to something that happened after the accident. There's nothing to say that these are quote unquote post-accident restrictions. These admittedly are unrelated restrictions to other parts of the body, but there's no evidence in the record that any of this happened post-accident. This is something that came up in the reply brief here because simply stated, the appellant has no argument. The case law all goes against them. The law is clear. You take the employee as you find them. If she can't go back to work, they have to examine everything. They have to say, is she employable? And that includes admittedly things that have no relationship to the specific injury itself. I concede the point. That's the law. That's the law. That's why their termination of benefits was unreasonable. That's why they tortured this woman for years and put her through all this. That's why penalties were awarded. And that is strongly- Dr. Johnson, let's get off the good guy, bad guy arguments. Can I ask you a question? Sometimes when you take facts to the ridiculous, you get answers. If a person is injured at work, let's say it's an injury like a rotator cuff. And based on that injury at that point in time, the person is employable. But shortly thereafter, they get into an auto accident and become a double amputee. Obviously, after that auto accident, they're not capable of working. Can anyone take into consideration the auto accident and award them the permanent total on an odd-lot basis? No. In that situation, you're talking about an intervening, superseding injury, someone that takes over. And in fact, Justice Hoffman, I go even further. It could be factually related. There's been cases where petitioners were going for their therapy and were crossing the street and got hit by a bus. Admittedly, it's factually related, but not medically related. That's entirely different. Unless your opponent established some type of a post-occurrence accident that rendered this petitioner unemployable in and of itself, then you're arguing that he has no argument vis-a-vis the odd-lot permanent. I would agree with that, Justice Hoffman. I'd like to address also the cross-appeal. As I set forth in my brief, the circuit court does not review the commission's reasoning. They review the commission's result. And I was a little bit confused. First of all, this issue was never raised. I didn't know that it was an issue until I received the order from the circuit court. I never had a chance to brief this issue in the circuit court. It kind of blindsided me, to be honest with you. But the law is clear. We look at the commission's decision, not the commission's reasoning. And in this case, the commission's award of penalties and fees is strongly, strongly supported by evidence in this record, including the testimony of the primary thing I would point to is my expert, my vocational expert, Mr. Grezek, who testified that it was inappropriate for the employer's expert to redo the restrictions that were set forth by the doctors in the case. A vocational expert obviously is not a medical doctor. He can't do that. He's straight outside of his lane on redoing that. And he also strayed outside of his lane in trying to dictate what the law in Illinois was, more specifically saying he doesn't have to consider these other parts of the body when evaluating the employability of an injured worker. That is more than sufficient evidence that supports the commission's award of penalties and fees, not just the late fees, but attorney's fees under K&L and section 16. So I think that the commission decision, including the penalties on all categories of penalties and fees, is strongly and competently supported by the evidence in this record. And I would ask that your honors reinstate the commission's decision in its entirety. And unless you have any questions, I don't have anything further. Any questions from the court? No. No, there are none. Thank you. Counsel, you may respond and reply. Yes, thank you, your honor. I didn't really hear in counsel's argument much about the WCE. A lot of my argument mainly was that the WCE was improperly relied upon and that the commission, it was against the manifest way to the evidence for the commission to rely on it because it came up with other limitations that were not work-related. And I've also cited too many cases where the same thing happened, where there were these limitations, post-accident limitations. I've always been arguing this. I don't know why counsel thinks this is something new. When you say they're post-accident limitations, is there evidence in the record as to when the condition arose? No, but I mean, that's not really the respondent's burden. It suddenly arose and now there are these limitations. When you say it suddenly arose, I don't understand. If she had those conditions at the point in time when she had the accident at work, you took her the way you found her. Now, if she had some type of an accident or an occurrence after the work-related accident, then there's an argument, I suppose, that the permanent, odd-life permanent total doesn't relate to the injury for which she seeks compensation. So my question is, where is the evidence in the record that this other condition that they relied on was something that occurred post-accident? The only evidence, Your Honor, is in the August 28, 2020 WCE, which gives restrictions of the hands and the legs. I don't know what we're supposed to do with the whole- If the condition of her hands and legs existed when she had the injury while working for your client, then in that particular case, isn't that proper to consider in determining whether she's an It is, and that would fall into the argument of you take them as you find them. But there is no evidence that she had limitations to her hands and her legs before the accident or immediately after the accident or any time until that 2020 WCE. And it seems to me that everyone relied upon that just blindly, and we have to rely on that, even though it has limitations that go to body and I think that's improper. And addressing counsel's argument about employability, her employability is impaired, but our vocational counselor said that she could do jobs in the fast food market and in housekeeping. So it's not to say that she's, even though it's impaired, that she's completely an odd lot permanent total, she can still work. And that's been our position. And we'd like to be part of the vocational process, but we've been dismissed. We haven't been allowed to talk to her or be with her about the return to work. Um, well, that's, that's the fact with this, uh, with the employer, the vocational counselor that you all hired minute, who arguably changed what the, uh, what the doctor's orders were with regard to her restrictions. Is that correct? Well, that part of it with him saying that she can lift up to 50 pounds. Uh, I couldn't find any evidence for that. You're right. But he, that was her reasoning for not allow or not wanting to go back to him. Correct. That was the reasoning for, I'm sorry, what's that? That was her reasoning for not being subjected to an evaluation by him again. I'm not sure what I, I don't know why she was disallowed to see him at all. Did, uh, did the, uh, did the climate offer, uh, other options to go see, to be evaluated by other people other than minute? The only other person, your honor was, uh, Tom, Thomas Grizzick, and she saw it to Thomas Grizzick. That was, uh, the petitioners vocational counselor. And, um, you know, I, so I still feel that with this WC it's, it's, uh, it's a problem. Um, I, I don't understand how, how the commission and all the subsequent courts can just blindly go with it. Um, when we've got Dr. Ho and, uh, and Thomas Grizzick saying we relied on it in giving our opinions. Um, I, I, I simply don't understand why, uh, restrictions to the hands and the legs are acceptable in this case. And I don't know why the respondent would be responding to the employer would be responsible for paying for benefits for those body parts that were obviously not injured at work. Um, just a question on, on your brief, um, on page 12, you have something in there, uh, says that I think Mr. Minick, um, in the past case, bottom paragraph there, he has given opinions that claimants are permanently, totally disabled. He has guided to those conclusions that the person is PTD based on national T. Uh, there are nine principles of national T and he goes through those principles, blah, blah, blah. What is national T? Uh, there's no explanation in the brief that I could find of what national T is. And if it's a citation to a case, is it cited in the brief anywhere? Your Honor, I apologize that national T is a well-known Supreme Court case. Well, and I, I apologize that it should nonetheless have been cited in my brief and it wasn't. Um, that was the, uh, vocational counselors rely on that in deciding, um, how their person's employability and whether they can work or not work. Um, and there are factors in national T, um, and, and you're right that I didn't cite it in my brief. Um, uh, but it's, it's, uh, it's, it's a case, I guess we all throw around as if, as if everyone, you know, knows about it, but, but I apologize that I didn't put it in my, it should still, the site should still be there. As long as we're on the topic of citations, you have several citations in your brief to worker, to commission decisions. They're not citable in front of us. Why are they there? I think they were illustrative. Your Honor, I know they're not precedential, but, uh, they were illustrative to show what the commission has done in the past. Um, we're not interested in what the commission has done in the past. We're interested in what the commission did in this case. And that's controlled by precedential authority. It's not controlled by commission decisions. The commission, the commission changes its mind based on who is appointed commissioner. We've had commission that never saw an injured plaintiff. We we've had commissions that never saw a petitioner that wasn't injured. It's not commission's decision. And that's why they're not citable. We don't refer to them. It's this case. What is the authority for your proposition in this case? I take your point, Your Honor. And I'm sorry. I, uh, that, uh, shouldn't show up in my brief, but, um, in many, in many cases, like many practitioners, I have the idea in mind with the commission decision. And I, and I didn't have the appellate or Supreme court citation. I have a question for you. And this is the first time I've ever asked this. So, uh, don't take it the wrong way, but with the, uh, with the new onset of AI programs for briefing and things of nature, uh, Illinois does not have a set and rule stone, uh, set in stone rule that requires disclosure of the use of AI and submissions to the court. But I am just curious as I've followed the AI development for quite some time, if any AI, if you all in preparing these briefs used AI in any way, I did not, Your Honor, not in any way. Okay. All right. Because they are, they are prone to some of the earlier programs, of course, were prone to putting together something very persuasive sounding, but they made up some things called, uh, hallucinations where they put something in there and they don't fully exist or they don't exist. And so I was just carrying like with the national team would not having the full site or whatever. And then with, uh, signing commission rules, if maybe that was an AI screw up, uh, that, that added that in there. So, all right. Thank you for, for your telling me that though. Counselor, your time has been up for some time. So your questions from the court, but are there any further questions from the court? No. Okay. Very good. Mr. Coughlin, you may respond, reply, um, just very briefly. Um, justice, uh, um, Barbara's in, in, in response to your question, um, the arbitrator did conduct pursuant to commission rule 91, 10.1 zero, um, did conduct on my motion, uh, a, a pretrial hearing with counsel and I regarding the, the vocational recommendations made by Mr. Minnick. And at that time, a recommendation was made that the parties agree on a neutral new person to do the, um, to, to take over for Mr. Minnick. Um, as you can, as you know, from the commission rule, the rule contemplates in this scenario, an interactive process by, uh, specifically requires involvement of the, of counsel for the injured worker. That's exactly the rule that I invoked. And we had that in this situation. However, the employer here refused to follow that and, uh, continued to cling to Mr. Minnick's, uh, um, opinions and refuse categorically refused to allow this injured worker to get a vocational opinion from any other source other than Mr. Minnick. And at that point we retained Mr. Grezik to get our opinion. And, and, you know, we went from there, but that, that was a recommendation that was made. It was a petitioner testified to that at the trial that she was willing to, to, to do that. But, uh, the, you know, it takes two to have an agreement and they refuse to do it. So that's why that didn't go any further than the recommendation. Okay. Thank you for clarifying that. Unless there's any other, uh, questions, I don't have anything further. Any questions from the court? No. Nothing. Okay. Well, thank you, counsel, both for your arguments in this matter this afternoon. It will be taken under advisement and a written disposition shall issue.